IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER P. LUCAS, | CASE NO. 1:20-CV-01791-JG |
| Plaintiff, | JUDGE JAMES GWIN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

INTRODUCTION

On August 12, 2020, Plaintiff Christopher Lucas filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision denying supplemental security income ("SSI"). (ECF #1). This Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On August 13, 2020 pursuant to Local Rule 72.2, this matter was referred to a Magistrate Judge for preparation of a report and recommendation, and was subsequently reassigned to me pursuant to General Order 2021-06. (Non-document entry dated May 20, 2021). Following review, and for the reasons stated below, I recommend the Court **REVERSE** and **REMAND** this matter.

PROCEDURAL BACKGROUND

Mr. Lucas filed for SSI on April 16, 2018, alleging a disability onset date of March 2, 2017. (Tr. 185-90). His claims were denied initially and on reconsideration. (Tr. 112-26). Mr. Lucas then

1

requested a hearing before an administrative law judge. (Tr. 127-29). Mr. Lucas (represented by counsel) and a vocational expert ("VE") testified at a hearing before the ALJ on July 22, 2019. (Tr. 35-62). On August 9, 2019, the ALJ issued a written decision finding Mr. Lucas not disabled. (Tr. 8-25). The Appeals Council denied Mr. Lucas's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7; *see* 20 C.F.R. §§ 416.1455, 416.1481). Mr. Lucas timely filed this action on August 12, 2020. (ECF #1).

## FACTUAL BACKGROUND

### I. ADMINISTRATIVE HEARING

Mr. Lucas, with his counsel, appeared at a hearing before the ALJ on July 22, 2019. (Tr. 35-62). Also present for testimony was a VE, Brett Salkin. (Tr. 35-36).

Mr. Lucas no longer has a valid driver's license. (Tr. 39). His last job was in 2011, working as a canvasser for three months. (*Id.*). That job did not require any lifting, although Mr. Lucas was required to walk and climb stairs for five hours a day, six days a week. (Tr. 39, 59). Mr. Lucas also testified to past work as an order picker for a three-month stint, a two-month position as a bell ringer for the Salvation Army, and a three-month position with Elyria Plastic Products. (Tr. 39-40). Mr. Lucas also recounted working as a "maintenance guy" at Burger King for three or four months in 2007; in that position, he cleaned the parking lot, unloaded trucks, rotated stock, changed the grease in the fryers, and cleaned the windows and signs in the restaurant. (Tr. 40). Mr. Lucas testified to lifting only 20-25 pounds in the Burger King position. (*Id.*). Although Mr. Lucas testified to other past temporary work, the ALJ identified the Burger King, canvassing, and order picker positions as the only relevant positions for the purposes of the VE's testimony during the hearing. (Tr. 41).

Mr. Lucas testified his condition had worsened since March 2018. (Tr. 42). He has "very bad pains" in his left side and is unable to raise his hands over his head. (*Id.*). He described the pain as "excruciating," stating it was as if he had stuck his toes in a socket and was being electrocuted. (Tr. 43). Mr. Lucas used to be active, but can no longer walk more than two blocks without significant pain. (*Id.*). Mr. Lucas also has swelling in his left hand and pain in his elbow due to a nerve issue in his shoulder. (*Id.*).

Mr. Lucas testified to difficulty going up and down stairs due to numbness and tingling on his left side. (Tr. 44). He is afraid of losing his balance and falling down the stairs, and described the feeling as if his left thigh were "dead." (Tr. 44-45). Mr. Lucas testified he is only able to stand for 15 minutes at a time before needing to sit down. (Tr. 45). Due to his back and shoulder impairment, Mr. Lucas is only able to lift about eight pounds. (*Id.*). Mr. Lucas testified he is unable to crawl on his hands and knees, has difficulty and is "off balance" when kneeling, has difficulty bending to pick things up, and has only "some" ability to squat and bend at the knees. (Tr. 45-46).

Mr. Lucas takes gabapentin to manage his pain. (Tr. 47). Mr. Lucas had also received injections in both shoulders and was referred to rehabilitation; at the time of his hearing, he was to have an injection in his lower back as well, but planned to reschedule that treatment. (Tr. 46-47). Mr. Lucas testified his primary care physician is Dr. Schroeder, who had taken over his care 18 months prior to the hearing, after Dr. Sieben retired. (Tr. 47-48).

Mr. Lucas testified he can no longer live by himself; he currently lives with a friend on a second-floor apartment. (Tr. 49). He has difficulty going up and down the stairs when accessing the apartment. (*Id.*). Mr. Lucas is able to do the dishes with difficulty and can take out the trash, but can no longer vacuum, shovel snow, tend to the yard, or carry groceries into the house. (Tr. 49-

3

50). He can still go grocery shopping, as he can use the cart like a walker; however, his son does most of Mr. Lucas's shopping and will pick up medications for him. (Tr. 50-51). Mr. Lucas also has difficulty with other daily activities, such as dressing and bathing himself. (Tr. 51). Most of Mr. Lucas's time is spent watching TV or sitting outside watching his grandchildren play in the yard. (Tr. 52).

The VE testified to Mr. Lucas's past work. (Tr. 55). According to the VE, Mr. Lucas's past work was classified as follows:

- Canvasser (DOT 291.357-010): SVP (specific vocational preparation) 2, unskilled, classified and performed at light exertion.

- Order picker (DOT 922.687-058): SVP 2, unskilled, classified as medium, performed at light exertion.

- Cleaner, maintenance (DOT 381.687-014): SVP 2, unskilled, classified as heavy, performed at medium exertion.

(Tr. 55). The ALJ then posed the following hypothetical to the VE:

> [A]ssume a hypothetical individual of the claimant's age, education, and work experience who is able to perform light exertional work activities as defined in the regulations with the following limitations: The individual could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and scaffolds; should never be exposed to unprotected heights, dangerous moving mechanical parts. The individual should avoid concentrated exposure to extreme heat and extreme cold.

(Tr. 55-56). The VE testified this hypothetical individual could perform the past canvasser job. (Tr. 56). The VE also identified other work the hypothetical individual could perform:

- Cashier (DOT 211.462-010): SVP 2, unskilled, light exertion, 600,000 jobs available in the national economy.

- Food service worker (DOT 311.677-010): SVP 2, unskilled, light exertion, 105,000 jobs available in the national economy.

4

- Packing line worker (DOT 753.687-038): SVP 2, unskilled, light exertion, 180,000 jobs available in the national economy.

(Tr. 56-57). The ALJ then added the following restrictions: an individual who could sit for 20 minutes, stand for 30 minutes, and never crouch, kneel, or crawl, and could occasionally reach. (Tr. 57). The VE responded the hypothetical individual could not perform past work, could not perform the three jobs previously identified, and could not perform any work at the light exertional level. (*Id.*).

When posed with the same hypothetical as the first but with a restriction to sedentary exertion, the VE testified that individual could no longer perform any of the past jobs. (*Id.*).

According to the VE's testimony, an individual could be off-task for no more than ten percent of the time and could only be absent once per month to sustain competitive employment. (Tr. 57-58).

Mr. Lucas's counsel asked the VE about exposure to extreme temperatures. (Tr. 58-59). The VE responded that exposure to temperature extremes in the DOT describes work with furnaces and ovens and would not affect past work as a canvasser, despite that job having some exposure to extreme hot and cold temperatures. (Tr. 58). However, if the hypothetical were changed to exclude all exposure to extreme temperatures, then the past work as canvasser would be precluded. (Tr. 58-59).

II. PERSONAL AND VOCATIONAL EVIDENCE

Mr. Lucas was born on August 20, 1966 and was 51 years old when he filed his application. (Tr. 85). He was therefore defined as an individual "closely approaching advanced age." (*Id.*; *see also* 20 C.F.R. § 416.963). Mr. Lucas has not been employed in work meeting the

standard of substantial gainful activity ("SGA") under the Social Security Act ("Act"). (Tr. 14; *see also* 20 C.F.R. §§ 416.971 *et seq.*). Therefore, Mr. Lucas has no past relevant work experience. (*Id.*).

III. RELEVANT MEDICAL EVIDENCE[1]

**Primary Care Physicians.** Rebecca Schroeder, M.D., is Mr. Lucas's primary care physician, and began overseeing Mr. Lucas's care after his prior physician, Louise Sieben, M.D., retired. (*See* Tr. 47). Dr. Sieben's progress notes from May 18, 2016, reflect a diagnosis of lumbar discogenic pain syndrome. (Tr. 279). Dr. Sieben prescribed twice-daily Percocet, to allow Mr. Lucas enough pain relief to function. (Tr. 278-79). Mr. Lucas was to return every three months and as needed. (Tr. 279).

Follow-up notes from August 19, 2016, indicate Mr. Lucas's spinal stenosis was stable. (Tr. 274-75). Dr. Sieben refilled Mr. Lucas's Percocet prescription for another three months and recommended follow up at that time. (*Id.*).

Dr. Sieben noted Mr. Lucas was walking stiffly due to his lumbar discogenic pain syndrome at a November 25, 2016 follow-up visit. (Tr. 273-74). Dr. Sieben refilled his Percocet prescription and referred Mr. Lucas for physical therapy. (Tr. 274).

At his February 24, 2017, appointment, Dr. Sieben continued Mr. Lucas on Percocet and referred him for physical medicine and rehabilitation ("PM&R"). (Tr. 269-70).

---

[1] Mr. Lucas challenges only the ALJ's determination that he was not disabled based on the ALJ's evaluation of Dr. Schroeder's opinion evidence concerning Mr. Lucas's back and left side issues, as consistent with Dr. Malkamaki's medical notes and supported by diagnostic imaging. (*See* Pl.'s Br., ECF #14, PageID 1011-13). As such, he waives argument on issues not raised in the opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). I have therefore summarized only the evidence relevant to that claim.

6

Dr. Sieben retired in 2018; notes from June 26, 2018 indicate Mr. Lucas was to present for follow up in three months with a new primary care provider. (Tr. 389). Dr. Schroeder began seeing Mr. Lucas in September 2018; his first visit for transfer of care was on September 25, 2018. (Tr. 402).

Notes from Mr. Lucas's follow-up appointment with Dr. Schroeder indicate paresthesia and a continued diagnosis of lumbar discogenic pain syndrome and spinal stenosis without neurogenic claudication. (Tr. 402-03). Dr. Schroeder recommended Mr. Lucas follow up with Dr. Malkamaki; however, Mr. Lucas indicated he did not wish to see Dr. Malkamaki for his PM&R visits and would prefer a second opinion. (Tr. 404).

Dr. Schroeder completed a treating source statement on May 29, 2019. (Tr. 455-59). Dr. Schroeder indicated Mr. Lucas had been seen for treatment every three months for the past six years. (Tr. 455). The statement also indicated diagnoses of osteoarthritis of the cervical spine radiating to bilateral shoulders, and spinal stenosis radiating to left groin and lower extremity. (*Id.*). Dr. Schroeder indicated Mr. Lucas's prognosis was poor. (*Id.*).

In Dr. Schoeder's opinion, Mr. Lucas could only walk ½ block without rest or severe pain, could sit for 20 minutes at a time, stand for 30 minutes, and could only sit or stand/walk for less than 2 hours in an 8-hour day. (*Id.*). In addition, Mr. Lucas required unscheduled breaks and the ability to shift positions from sitting, standing, or walking. (*Id.*). He could never lift 50 pounds, rarely lift 20 pounds, and only occasionally lift 10 pounds. (Tr. 456). Mr. Lucas could never stoop, crouch, squat, climb ladders, kneel, or crawl, and could only rarely twist, climb stairs, or balance. (*Id.*). Dr. Schroeder also indicated Mr. Lucas has significant limitations with reaching, handling, or fingering. (*Id.*). Dr. Schroeder attached x-ray reports showing disc space narrowing spanning L2-S1,

7

anterior marginal spurring at L4-5L and L5-S1 with endplate sclerosis most severe at L5-S1. (Tr. 458-61).

**Physical Medicine & Rehabilitation.** Daniel Malkamaki, M.D., treats Mr. Lucas's back and left side issues, and is part of the same MetroHealth hospital system as Drs. Schroeder and Sieben. (*See, e.g.*, Tr. 265). Mr. Lucas has received treatment from Dr. Malkamaki since at least 2015. (*See* Tr. 267-68) ("patient presents for follow-up. He was last seen ~3/2015").

X-rays from a visit on March 30, 2017 showed disc space narrowing at L2-S1, anterior marginal spurring at L4-L5 and L5-S1 with endplate sclerosis most severe at L5-S1. (Tr. 267). Dr. Malkamaki described Mr. Lucas's symptoms as 80% on the left and 20% on the right, with left lower extremity numbness and pain shooting into the feet. (*Id.*). PM&R treatment notes indicate Mr. Lucas is only able to walk for approximately 12 minutes before needing to sit. (*Id.*). Dr. Malkamaki also notes a positive "shopping cart sign," indicating neuroclaudication or pseudoclaudication symptoms from spinal stenosis.[2] (*Id.*). Physical examination findings demonstrate a lumbosacral range of motion limited to 40 degrees of forward flexion (with pain) and 5 degrees of extension. (Tr. 268). In Dr. Malkamaki's opinion, Mr. Lucas has spinal stenosis, with clinical evidence of left pseudoclaudication symptoms. (*Id.*). Dr. Malkamaki continued Mr. Lucas on Naprosyn for pain relief during home exercise, with the intent to wean off the medications within six weeks. (Tr. 268-69).

---

[2] "Shopping cart sign" is a diagnostic descriptor referring to the pain relief a patient with lumbar spinal stenosis experiences when sitting or leaning over as if pushing a shopping cart. *Lumbar Stenosis*, *American Academy of Physical Medicine and Rehabilitation*, https://www.aapmr.org/about-physiatry/conditions-treatments/musculoskeletal-medicine/lumbar-stenosis (last accessed Nov. 30, 2021).

On July 18, 2018, Dr. Malkamaki notes a worsening of Mr. Lucas's lower back pain radiating down his left lower extremity. (Tr. 315). At this visit, Mr. Lucas reported left upper extremity paresthesia when he walks. (*Id.*). Dr. Malkamaki again noted Mr. Lucas's ability to walk for only about 15 minutes before needing to sit due to pain, and positive shopping cart signs. (*Id.*). Mr. Lucas rated his pain as six out of ten, localized to his lumbar region, occurring intermittently but daily. (*Id.*). Mr. Lucas reported the pain increases with bending, standing, walking, and sitting, and is relieved with medication, rest, and changing positions. (*Id.*). Dr. Malkamaki again noted a lumbosacral range of motion limited to 40 degrees of forward flexion (with pain) and 5 degrees of extension. (Tr. 395). Dr. Malkamaki recommended considering transforaminal epidural steroid injections, but both Dr. Malkamaki and Mr. Lucas agreed on a more conservative course of treatment at first. (Tr. 396).

X-rays from July 18, 2018 indicate minimal multilevel disc space narrowing and endplate osteophyte formation; impression was minimal multilevel discogenic degenerative disease and bilateral carotid bulb calcifications. (Tr. 397, 400).

On June 11, 2019, Mr. Lucas was seen by Brendan Astley, M.D., for right and left trapezius trigger point injections. (Tr. 448-53). Dr. Astley's notes indicate Mr. Lucas can stand for 20 minutes, sit for 30 minutes, and walk for 15 minutes. (Tr. 448). Mr. Lucas reported weakness in his thighs, but did not use a cane or walker to ambulate. (Tr. 450). Mr. Lucas reported his pain at seven out of ten. (Tr. 448). Mr. Lucas reported an inability to keep his arms raised or to complete his activities of daily living due to pain. (Tr. 450). Dr. Astley assessed Mr. Lucas with cervical radiculitis and osteoarthritis of the spine with radiculopathy. (Tr. 452).

9

## THE ALJ'S DECISION

The ALJ's decision included the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since March 23, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical, lumbar and lumbosacral spine; radiculopathy in thoracic, cervical and lumbosacral spine; obesity; obstructive sleep apnea (OSA); spinal stenosis; coronary artery disease; and ischemic heart disease, status post anterior wall myocardial infarction, angioplasty and stents placement (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch or crawl. He should never limb ladders, ropes or scaffolds. He should never be exposed to hazards, such as unprotected heights or dangerous moving mechanical parts. He should avoid concentrated exposure to extreme heat and extreme cold.

5. The claimant is capable of performing past relevant work as a canvasser. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 23, 2018, the date the application was filed (20 CFR 416.920(f)).

(Tr. 14-22).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up). A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted).

Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). *See also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was Claimant engaged in a substantial gainful activity?
2. Did Claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
3. Does the severe impairment meet one of the listed impairments?
4. What is Claimant's residual functional capacity and can Mr. Lucas perform past relevant work?
5. Can Claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only those claimants who satisfy each element of the

analysis, including inability to do other work, and meet the duration requirements, are determined to be disabled. 20 C.F.R. § 416.920(b)-(f). *See also Walters*, 127 F.3d at 529.

DISCUSSION

Mr. Lucas raises error with the ALJ's evaluation of the opinion of his treating physician, Dr. Schroeder. (Pl.'s Br., ECF #14, PageID 1007-14). Mr. Lucas contends that although the ALJ articulated his reasoning for finding Dr. Schroeder's opinion unpersuasive, such reasoning was factually incorrect and was not supported by evidence in the record. (*Id.* at 1011).

The Commissioner concedes that the ALJ's articulated reason for finding Dr. Schroeder's opinion was not correct. (Comm'r's Br., ECF #16, PageID 1026) ("Although the ALJ's reference to improvement after surgery was wrong (plaintiff did not actually have surgery). . . ."). However, the Commissioner argues that any such error was harmless, because Dr. Schroeder's opinion was unsupported and "patently deficient." (*Id.* at 1024, 1026).

Under 20 C.F.R. § 416.920c, for claims filed on or after March 27, 2017, the ALJ is to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 416.920c(b). The ALJ is not required to defer to or give any specific evidentiary weight to a medical opinion, and is not required to give a treating source controlling weight. *Id.* at § 416.920c(a). Instead, the ALJ must articulate the consideration given to the medical opinions in the record, grounded in the two

13

"most important factors"—supportability[3] and consistency.[4] *Id.* at § 416.920c(b). The regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform physical demands of work activities, the ability to perform mental demands of work activities, the ability to perform other demands of work, and the ability to adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2).

The determination of an individual's residual functional capacity is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Even so, substantial evidence must support the Commissioner's residual functional capacity finding. *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Commissioner is correct that an ALJ is no longer bound by the "treating physician rule," and is not required to find Dr. Schroeder's opinion persuasive. *See Jones v. Comm'r of Soc. Sec.*, No. 19-1102, 2020 WL 1703735, at *2 (N.D. Ohio Apr. 8, 2020). Rather, an ALJ must only explain how they considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors. *Id.*, *see also* 20 C.F.R. § 416.920c(b)(2). But while the ALJ is not required to find a treating physician's opinion persuasive, the ALJ is required to provide *justifiable* reasons for rejecting the opinion. *See Blakley v. Comm'r of*

---

[3] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion(s) or prior administrative medical finding(s), the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the opinion(s) and finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

*Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009) (emphasis added). Such error may be harmless if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" or if it is an excusable *de minimis* procedural violation. *Id.* at 409, *quoting Wilson*, 378 F.3d at 547. But an ALJ's failure to follow agency procedures is not harmless error when it prevents this Court's meaningful review. *Id.*; *see also Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018).

Here, in relevant part, the ALJ provided the following reasoning for finding Dr. Schroeder's opinion unpersuasive:

> The undersigned found this opinion unpersuasive because the medical evidence of record does not support it. Diagnostic imaging supports only minimal degenerative disc disease of the cervical spine. The claimant underwent surgical intervention and his symptoms improved. Physical examinations do not reveal any significant findings of radiculopathy and current examinations not [*sic*] a stable gait and normal range of motion.

(Tr. 19). However, as Mr. Lucas points out, and the Commissioner in part concedes, this paragraph contains certain factual inaccuracies. First, as the Commissioner acknowledges, Mr. Lucas has never undergone surgery for his back. (*See* Pl's Br., ECF #14, PageID 1012; Comm'r's Br., ECF #16, PageID 1026). Neither does Mr. Lucas report improved symptoms. (*See, e.g.*, Tr. 448-53) (treatment notes from June 20, 2019, indicating Mr. Lucas's ability to stand for 20 minutes, sit for 30 minutes, walk for 15 minutes, and indicating difficulty with his activities of daily living due to leg pain and inability to keep his arms raised). Second, while treatment notes indicate a normal *cervical* range of motion (*see* Tr. 304, 316), Mr. Lucas's *lumbosacral* range of motion was indeed limited. (*See* Tr. 316, 395). Finally, treatment notes from June 2019 indicate a finding of radiculopathy. (Tr. 452).

15

I find the ALJ's reference to incorrect statements of fact concerning Mr. Lucas's treatments and symptoms prevents meaningful review by this Court. Without justifiable citations to the record, I can only conclude that the ALJ's decision was not supported by substantial evidence and any findings contained within it defective.

Although the descriptions contained in Dr. Schroeder's medical source opinion may be limited and mostly consist of responding to a checkbox form designed by Mr. Lucas's counsel, this does not automatically render them "so patently deficient that the Commissioner could not possibly credit it." *Blakley*, 732 F. App'x at 440. Rather, such opinions may be relied upon where they include objective findings or are otherwise not contradicted by opinions from other medical providers. *Id.* at 441. Such is the case here.

And, as this Court has stated, "arguments crafted by defense counsel are of no consequence, as it is the opinion given by an administrative agency rather than counsel's *post hoc* rationale that is under the Court's consideration." *Muniz v. Astrue*, No. 1:11-CV-00499, 2012 WL 314094, at *7 (N.D. Ohio Feb. 1, 2012) (cleaned up). As such, the Commissioner's arguments for finding Dr. Schroeder's opinion unpersuasive—allegations that she does not have a long history of treating Mr. Lucas, that she does not have access to review other treating physician notes, or that the diagnostic imaging attached to her opinion may not have been attached by her at all[5]—are of no consequence in my review.

For the reasons stated above, I do not agree with the Commissioner's presentation of Dr. Schroeder's opinion as unsupported by the record or otherwise "patently deficient." Nor do I find

---

[5] *See* Comm'r's Br., ECF #16, PageID 1026-1029, 1028 n. 5. I find this final statement particularly misplaced given that the pages at issue plainly state: "Printed by Schroeder, Rebecca L., M.D." *See* Tr. 458-61.

the ALJ's articulation of erroneous facts as evidence is harmless error. To the contrary, a decision based on erroneous facts is one not supported by substantial evidence. I therefore recommend the Court remand the Commissioner's decision, with instruction to appropriately evaluate Dr. Schroeder's opinion in the context of its consistency and supportability against other medical evidence in the record; and, if the re-evaluation of Dr. Schroeder's opinion supports more restrictions, to reconsider the RFC.

## Conclusion

Following review of the arguments presented, the record, and the applicable law, I find the ALJ's decision denying SSI is not supported by substantial evidence. Therefore, I recommend that the District Court **REVERSE** and **REMAND** the Commissioner's decision.

Dated: November 30, 2021

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.** See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)